# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

WESTERN SURETY COMPANY,

                Plaintiff,

v.                                             CIVIL ACTION NO. 5:16-cv-09550

ROCK BRANCH MECHANICAL, INC., et al.,

                Defendants.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed *Western Surety Company's Motion for Partial Summary Judgment* (Document 57) and the *Memorandum in Support* (Document 58), *James B. Clark and Sally L. Clark's Response in Opposition to Western Surety Company's Motion for Partial Summary Judgment* (Document 63), *Western Surety Company's Reply* (Document 66), and all attached exhibits. The Court has also reviewed *James B. Clark and Sally L. Clark's Motion for Summary Judgment* (Document 86) and the *Memorandum of Law in Support* (Document 87), *Western Surety Company's Memorandum in Opposition to James B. Clark and Sally L. Clark's Motion for Summary Judgment* (Document 89), the *Reply of James B. Clark and Sally L. Clark* (Document 90), as well as all attached exhibits. For the reasons stated herein, the Court finds that the Plaintiff's motion for partial summary judgment should be granted, and the Defendants' motion for summary judgment should be denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Plaintiff, Western Surety Company ("Western Surety"), initiated this suit by filing a complaint in this Court on October 12, 2016. The Plaintiff named as Defendants Rock Branch Mechanical, Inc. ("Rock Branch"), a West Virginia corporation, James Brandon Clark a/k/a Brandon J. Clark, Danielle M. Clark a/k/a Danielle M. Robinson, James B. Clark, and Sally L. Clark.[1] In its complaint, the Plaintiff alleges breach of contract and seeks indemnification and specific performance based on the Defendants' failure to indemnify it under the terms of an indemnification agreement entered into by the parties. The Plaintiff alleges that the indemnitors, specifically James B. Clark, Sally L. Clark, and Danielle M. Clark, are obligated to reimburse and indemnify it for the losses it has incurred from its issuance of payment and performance bonds. According to the Plaintiff, the Defendants' failure to indemnify it for the payments it has made on the bonds it issued constitutes a breach of the indemnification agreement and entitles the Plaintiff to specific performance.

Rock Branch was hired by the general contractor Radford & Radford ("Radford") as a subcontractor to perform mechanical and HVAC work on construction of the Student Center at the West Virginia School of Osteopathic Medicine in Lewisburg, West Virginia. Because the project was a bonded one, Rock Branch was required to receive bonds as a subcontractor, and it engaged

---

1 After the filing of the complaint, but before the filing of the cross motions for summary judgment, Defendant James Brandon Clark, not to be confused with Defendant James B. Clark, filed with the Court a *Suggestion of Bankruptcy* (Document 8). Thereafter, the Court entered an *Order* (Document 15) staying the case as to James Brandon Clark pending the bankruptcy proceedings. On August 24, 2017, having been advised that the bankruptcy proceedings as to James Brandon Clark were resolved, the Court entered its *Order* (Document 88) lifting the stay as to James Brandon Clark. However, the motions addressed herein do not immediately implicate James Brandon Clark individually. On November 16, 2016, Rock Branch Mechanical also filed a *Suggestion of Bankruptcy* (Document 23), and this Court entered an *Order* (Document 24) staying the case as to Rock Branch. On June 28, 2017, Defendant Danielle M. Clark filed her *Suggestion of Bankruptcy* (Document 77). In response, the Court entered an *Order* (Document 78) staying the case as to Danielle M. Clark.

Western Surety to issue the appropriate subcontract performance and payment bonds. The performance bond was issued to insure Rock Branch performed its subcontract obligations under Radford, and the payment bond was issued to insure all persons and entities who supplied labor and materials to Rock Branch were compensated for their work. Each of the bonds was in the amount of $2,771,970.00, and refer to Rock Branch as principal, Radford as obligee, and Western Surety as the surety that issued the bonds. (Mot. for Sum. Judg., Ex. 2A and 2B.)

Western Surety issued the bonds to Rock Branch in reliance on Rock Branch's execution of a General Agreement of Indemnity ("GAI"). The GAI was signed by Rock Branch through Rock Branch's president, Brandon J. Clark.[2] (Plaintiff's Mot. for Sum. Judg., Ex. 1) (Document 57-2.) It was also endorsed by James B. Clark, Sally L. Clark, Brandon J. Clark, and Danielle M. Clark as individual indemnitors. (*Id.*) James B. Clark was blind at the time he signed the GAI and therefore required his wife Sally L. Clark to sign for him. (Depo. of Sally L. Clark, at 17:24-25.) In the GAI, Rock Branch and the individual indemnitors agreed to "indemnify and save [Western Surety] harmless from and against any loss which [Western Surety] may pay or incur." (*Id.* at ¶ 3.) The GAI defines "loss" as including "any and every claim, demand, liability, cost, charge, suit, . . . on any amounts due the Surety, and expense, including . . . attorney fees and consultant fees incurred by [Western Surety] as the result of issuing or considering the issuance of a Bond." (*Id.* at ¶ 1.) The GAI also defines "Event of Default" to include, among other things, "(d) Principal's failure, neglect, or refusal to pay for any labor or materials used in the prosecution of any Bonded Contract . . . ." (*Id.*)

---

2 Brandon J. Clark is also sometimes referred to in this pleading and others throughout litigation as "James Brandon Clark." However, because another named defendant is his father, James B. Clark, the Court will henceforth refer to the president of Rock Branch as Brandon Clark.

3

On May 12, 2016, Western Surety received a letter from Astar Abatement & Insulation ("Astar"). Astar was a subcontractor performing work for Rock Branch on the Osteopathic school project, and in its letter to the Plaintiff, advised that it was filing a claim against Rock Branch's payment bond for work it had done and for which Rock Branch had not made payment. (Decl. of Jarome Gardocky, ¶ 5.) The Plaintiff also received claims against the payment bond from two other subcontractors of Rock Branch and from a union. (*Id.*) On May 13, 2016, the Plaintiff received a letter from Radford advising that Rock Branch had abandoned the project and that Radford was noticing a formal claim against Rock Branch's performance bond. (*Id.* at ¶ 6; Pl.'s Mot. for Sum. Judg., Exhibit 3.) On May 17, 2016, Radford sent a notice of default to Rock Branch, and on May 19, 2016, Radford officially terminated Rock Branch as subcontractor as a result of its failure to promptly carry out work on the project and make timely payments to its subcontractors. (Decl. of Jarome Gardocky, ¶ 6; Pl.'s Mot. for Sum. Judg., Exhibit 4.) According to Defendant James B. Clark, the vice president of Rock Branch at the time of these occurrences, Brandon Clark closed Rock Branch around this same time of May 2016. (Depo. of James B. Clark, at 8:3-8.) The Plaintiff investigated these claims and informed the indemnitors of the receipt of claims against the bonds. Mr. and Mrs. Clark did not respond to the notice of the claims, citing a change of address. The Plaintiff also engaged an outside consulting firm to visit the project site and discuss issues with Radford and Rock Branch's subcontractors and to consult with Rock Branch through Brandon Clark, Rock Branch's president. Based on these investigations, Western Surety made payments on the claims against Rock Branch's payment bonds in the amount of $350,533.66. (Decl. of Jarome Gardocky, ¶ 5; Pl.'s Mot. for Sum. Judg., Exhibit 5-13.) The Plaintiff has also incurred the expense of $62,940.47 in attorney's fees,

consultants' fees, and expenses in investigating the claims and seeking enforcement of the GAI against the Defendants. (Decl. of Jarome Gardocky, ¶ 11.)

With respect to Radford's claim on Rock Branch's performance bond, the Plaintiff again conducted an investigation and consulted with Rock Branch through Brandon Clark. Together, the Plaintiff and Rock Branch recommended The Dougherty Company as a replacement contractor to complete the work left unfinished by Rock Branch. The Plaintiff and Radford also agreed that Rock Branch's three subcontractors would continue to perform their remaining work and be compensated from the funds remaining in Radford's contract balance from the subcontract with Rock Branch. Radford, Western Surety, the Dougherty Company, and the three subcontractors jointly executed a Tender and Completion Agreement signifying their agreement. (Pl.'s Mot. for Sum. Judg., Exhibit 14.) The construction work on the project is complete, and the Plaintiff and Radford are resolving remaining issues. However, as of the date of the Plaintiff's motion, the Defendant indemnitors had failed to meet their alleged indemnification obligations under the GAI.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning

a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be

granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

When presented with motions for summary judgment from both parties, courts apply the same standard of review. *Tastee Treats, Inc. v. U.S. Fid. & Guar. Co.*, 2008 WL 2836701 (S.D. W. Va. July 21, 2008) (Johnston, J.) *aff'd*, 474 F. App'x 101 (4th Cir. 2012). Courts "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," resolving factual disputes and drawing inferences for the non-moving party as to each motion. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted); *see also Monumental Paving & Excavating, Inc. v. Pennsylvania Manufacturers' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).

**DISCUSSION**

Western Surety and Defendants James B. Clark and Sally L. Clark have moved for summary judgment. The Court will first address certain arguments in Mr. and Mrs. Clark's motion, and will then address Western Surety's motion.

*A. Mr. and Mrs. Clark's Summary Judgment Motion*

Mr. and Mrs. Clark move the Court for summary judgment on the following bases. First, they assert that summary judgment is appropriate in their favor because Western Surety failed to consult with them personally before settling and paying claims against Rock Branch's bond. They again argue that the West Virginia Supreme Court's holding in McNamara required the Plaintiff to consult with both Rock Branch and each individual indemnitor. Secondly, they argue the GAI is unenforceable due to a lack of meeting of the minds. Mr. and Mrs. Clark assert that they never intended to enter into a contract that would extend into the future when they signed the

7

GAI, and therefore, no meeting of the minds occurred to make the contract enforceable. Finally, they argue that the GAI is also unenforceable because it is procedurally and substantively unconscionable. Mr. and Mrs. Clark assert that the GAI left them with no rights, that they received no personal benefit from it, and that their lack of alternatives made the GAI procedurally unconscionable. They, therefore, assert that the GAI is unenforceable.

The Plaintiff counters that it extensively consulted with Rock Branch, as stated in its motion for summary judgment, and that it had no duty to consult with every individual indemnitor, especially given that the individual indemnitors were officers of the company when the agreement was signed. The Plaintiff further counters that there was a meeting of the minds. The Plaintiff argues that both Mr. and Mrs. Clark were mature parties, and their deposition testimony reflects they understood what it meant to sign an indemnification agreement and why it was necessary. Finally, the Plaintiff asserts that the GAI was neither procedurally nor substantively unconscionable. The Plaintiff argues that both Mr. and Mrs. Clark were officers of a very large and profitable mechanical subcontracting firm and were given the opportunity to read and understand the GAI before signing it. Further, the Fourth Circuit and this Court have upheld indemnification agreements nearly identical to this one, according to the Plaintiff. Thus, the Plaintiff asserts that the GAI is enforceable, or that genuine issues of material fact arise such that summary judgment in favor of the Defendants should be denied.

With respect to Mr. and Mrs. Clark's first argument, that the Plaintiff owed them a good-faith duty to consult before settling claims, the Court resolved this matter in its *Memorandum Opinion and Order* (Document 96) regarding the Plaintiff's motion to dismiss counterclaims. The

Court incorporates herein the reasoning and findings relative to this issue from the prior opinion, and no further discussion is necessary here.

The Court further finds that there is no genuine issue of material fact regarding a meeting of the minds between the parties in executing the GAI. Pursuant to West Virginia law, "[a] meeting of the minds of the parties is a sine qua non of all contract." Syl. Pt. 2, *Triad Energy Corp. of W. Virginia v. Renner*, 600 S.E.2d 285, 286 (W.Va. 2004); Syl. Pt. 1, *Burdette v. Burdette Realty Improvement, Inc.*, 590 S.E.2d 641, 641 (W.Va. 2003). The deposition testimony of the parties is instructive. Mr. Clark was a mechanical engineer who for several years ran a multi-million dollar HVAC business with 50 to 100 employees. (Depo. of James B. Clark, 10:4-11:20.) Mr. Clark specifically testified that he understood it was "standard practice when we got a bond, we had to personally guarantee it," that he understood that his signature on the indemnity agreement meant he would personally reimburse the surety, and that his understanding of the reason for a payment bond was that "[i]n the event [Rock Branch] don't pay, I guess the bonding company will step in and pay if we default." (*Id.* at 22:21-24:17.) This testimony clearly demonstrates that Mr. Clark understood the terms of the GAI and that he and the Plaintiff had a meeting of the minds when they signed it. Mrs. Clark testified that she had no recollection of the GAI, nor did she know the purpose of it when she signed it. (Depo. of Sally L. Clark at 18.) Pursuant to West Virginia law, however, "the fact that [a party] may have signed a document without reading it first does not excuse them from the binding effect of the agreements contained in the executed document." *Nationstar Mortg., LLC v. West*, 785 S.E.2d 634, 641 (W.Va. 2016). Thus, viewing the evidence and testimony in the light most favorable to Western Surety, the non-

moving party, the Court finds that no reasonable juror could find that there was no meeting of the minds between Western Surety and Mr. and Mrs. Clark when the GAI was executed.

Further, a finding that the contract was unconscionable is not appropriate given the evidence presented. "Under West Virginia law, we analyze unconscionability in terms of two component parts: procedural unconscionability and substantive unconscionability." *Nationstar Mortg.,* 785 S.E.2d at 638. "Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction." *Id.* "These inadequacies, include . . . the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." *Id*. The party challenging a contract provision for unconscionability bears the burden of proof on that issue. *Nationstar Mortg.,* 785 S.E.2d at 638 (2016) (citing *Brown I* at 284); *U.S. ex rel. TBI Investments, Inc. v. BrooAlexa, LLC*, 119 F. Supp. 3d 512, 528 (S.D.W. Va. 2015) (Johnston, J.) (same). In *Nationstar*, the appellants argued that the contract at issue was not procedurally unconscionable, and the West Virginia Supreme Court agreed. *Id.* at 639. The Court found that, although the agreement very likely was a contract of adhesion, the fact that it was prepared by a party with more power, lacked an "opt out provision" giving the appellees some choice in the matter, and a perceived lack of separate consideration did not make the agreement procedurally unconscionable. *Id.* at 640-41.

Here, the Court finds that Mr. and Mrs. Clark have failed to present evidence of how the GAI was procedurally unconscionable. As has already been made clear, Mr. Clark was an officer

10

of Rock Branch when he signed the GAI, he knew what an indemnification agreement was and what it meant, and he knew he was executing one. While Mrs. Clark claims that she did not have time to read it, her alleged failure to read the document before signing it does not excuse her from its binding affect. Further, Mr. and Mrs. Clark's argument that they received no benefit from the GAI is without merit. Mr. and Mrs. Clark were officers of Rock Branch and had a material stake in its success as a business. By executing the GAI, Mr. and Mrs. Clark both personally received the benefit of the bonds from Western Surety, ensuring that their business (which Mr. Clark purchased and in which he had a 50% ownership interest) could be used as a subcontractor on bonded projects like the Osteopathic School project in this case. Mr. and Mrs. Clark were sophisticated parties who understood what they were doing when they executed the GAI and who received a benefit from the GAI in the form of bonds issued to their company.

Further, no finding that the GAI was substantively unconscionable is appropriate. When considering substantive unconscionability, the Court should focus on "the nature of the contractual provisions rather than the circumstances surrounding the contract's formation." *Id.* at 641. "Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly-harsh effect on the disadvantaged party." *Id.* at 642 (internal quotations emitted). "Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." *Id.* Here, Mr. and Mrs. Clark argue that the GAI was "oppressively one-sided" because it gave them no opportunity for a say in the settlement of claims against the bond, and because they received no benefit from the GAI. As noted above, neither this Court nor the Fourth Circuit has found indemnification agreements with nearly identical

11

language to be unconscionable, and has readily enforced them. *See*, *Fid. & Deposit Co. of Maryland v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, 1163 (4th Cir. 1983); *Am. Ins. Co. v. Egerton*, 59 F.3d 165 (4th Cir. 1995) (unpublished opinion); *Buckeye Union Ins. Co. v. Boggs*, 109 F.R.D. 420, 424 (S.D.W. Va. 1986). Further, as the Court has also found, Mr. and Mrs. Clark were officers of Rock Branch and, until its doors were closed in May 2016, Mr. Clark was in contact with the president of the company (his son) concerning the company's business. Their claim that they received no benefit from the GAI is hollow.

Further, the Court finds that the purpose and effect of the terms, the allocation of risk, and the public policy concerns all weigh in favor of the Plaintiff. Western Surety issued Rock Branch a bond, and agreed to be on the hook in the event of Rock Branch's failure, for more than 2 million dollars. Mr. and Mrs. Clark, as officers of Rock Branch, understood that Rock Branch needed these bonds to get projects, and agreed to hold the Plaintiff harmless if Rock Branch failed to pay and perform. Although the Clarks rely heavily on the *McNamara* decision, the *McNamara* court instituted the good-faith requirement for a surety to consult with the principal out of a public policy concern for both indemnitors *and* sureties. Mr. and Mrs. Clark were given notice of the claims both through the Plaintiff's consultation with Rock Branch and through the Plaintiff's notice sent to Mr. and Mrs. Clark personally. As officers of Rock Branch, the Clarks had the duty to stay abreast of Rock Branch's business and opportunity for input into the settlement of claims against the bonds. They understood this when they signed the GAI. No public policy favors relieving them of obligations in the agreement they willingly and knowingly signed.

Having considered the relevant evidence in the light most favorable to the Plaintiff, the

Court finds that the Defendants have failed to present evidence indicating the existence of a genuine issue of material fact as to the parties' meeting of the minds or the GAI being procedurally or substantively unconscionable and, therefore, summary judgment in Mr. and Mrs. Clark's favor is not appropriate.

### B. *Western Surety's Summary Judgment Motion*

Western Surety argues that it is entitled to summary judgment because it has shown that it suffered a loss under the bonds it issued, that the Defendants agreed to indemnify it under the GAI, and that the Defendants have failed to satisfy the requirements of the GAI. The Plaintiff asserts that, pursuant to the GAI, the indemnitors agreed to fully hold Western Surety harmless for any loss or expense it incurred as a result of issuing the bonds to Rock Branch and argues that the declaration of Jerome Gardocky, its claims representative, satisfies its burden of proving its losses under the bonds issued to Rock Branch. The Plaintiff further argues that the Defendants have failed to show that the Plaintiff settled the claims on the bonds in bad faith, thereby leaving the Defendants' duty to indemnify intact. Therefore, the Plaintiff contends it is entitled to summary judgment in the amount of $413, 474.43 for payments made on the performance bonds, and for its expenses and attorney's fees of $62,940.47 resulting from investigation and litigation.

Defendants James B. Clark and Sally L. Clark first counter that the Plaintiff's settlement of the claims on Rock Branch's bond was completed in bad faith because Western Surety had a duty under West Virginia law to consult with the Clarks as individual indemnitors. The Court has disposed of this argument in its previous opinion.

Mr. and Mrs. Clark further counter that the GAI should be void because it grants the Plaintiff a windfall. They claim that the language of the GAI entitles the Plaintiff to both the

balance of the contract between Radford and Rock Branch and what the Plaintiff alleges it has paid out for the claims against Rock Branch's payment bonds. Finally, Mr. and Mrs. Clark argue that, even if Western Surety did not owe them the duty to consult before settling the claims on Rock Branch's bonds, there are still genuine issues of material fact that preclude a grant of summary judgment in the Plaintiff's favor. Mr. and Mrs. Clark argue that the Plaintiff has presented no concrete evidence that it acted in good faith in settling the claims, that it has not accurately set forth the amount of damages it is entitled to, and that there are genuine, material issues as to the affirmative defenses raised by Mr. and Mrs. Clark.

At the outset, the Court notes that the GAI is a contract, and general contract interpretation rules under West Virginia law are applicable. Therefore, the Court should strive to discharge the intent of the parties. *See*, *Bennett v. Dove*, 277 S.E.2d 617, 618-19 (W.Va. 1981). Pursuant to West Virginia law, "[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. Pt. 5, *VanKirk v. Green Const. Co.*, 466 S.E.2d 782, 783 (W.Va. 1995). Further, "it is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." Syl. Pt. 3, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 128 S.E.2d 626, 628 (W.Va. 1962).

Although the Court has previously found that the Plaintiff did not owe a duty to consult with Mr. and Mrs. Clark in their capacities as individual indemnitors, in view of the arguments made by the Defendants, the Court will separately address whether there is evidence to create a

genuine issue of fact as to whether the Plaintiff otherwise acted in bad faith in settling or paying the claims against Rock Branch's bonds.

"Lack of good faith in the suretyship context 'carries an implication of a dishonest purpose, a conscious doing of wrong, a breach of a duty through motives of self-interest or ill will.'" *Safeco Ins. Co. of Am. v. Mountaineer Grading Co.*, No. 2:10-CV-01301, 2012 WL 830158, at *7 (S.D.W. Va. Mar. 9, 2012) (internal citation omitted). The Plaintiff has presented evidence that, upon receiving claims against the bond from Radford and three of Rock Branch's subcontractors, the Plaintiff's representative consulted closely with Rock Branch in settling the claims. The Plaintiff sought Rock Branch's opinion, and actually used Rock Branch's advice in agreeing to put forth The Dougherty Company. (Decl. of Jarome Gardocky, ¶ 9). The Defendants have presented no evidence to counter Western Surety's evidence of good-faith settlement or to show that it undertook settlement of claims with a dishonest purpose, a conscious doing of wrong, or with its own self-interests in mind. Nor do the Defendants dispute that the Plaintiff consulted with Rock Branch in settling the claims. Therefore, the Court finds that there is no genuine issue of material fact that the Plaintiff's settlements were made in good faith.

As to the language of the GAI itself, "[i]n construing the language of an express indemnity contract, the ordinary rules of contract construction apply." Syl.. Pt. 4, *VanKirk v. Green Const. Co.*, 466 S.E.2d 782, 783 (W.Va. 1995). The Fourth Circuit has held that "where there is such an express [indemnification] contract, 'a surety is entitled to stand upon the letter of his contract.'" *Fid. & Deposit Co. of Maryland v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, 1163 (4th Cir. 1983) (internal citations omitted); *see also*, *Bell BCI Co. v. Old Dominion Demolition Corp.*, 294 F. Supp. 2d 807, 812 (E.D. Va. 2003) (finding that an indemnification agreement nearly identical

15

to the one at hand was unambiguous and "must therefore be applied in accordance with their plain meaning"). As this Court has previously stated, the Fourth Circuit and other district courts within it have on several occasions upheld the terms of indemnification agreements the same or very similar to the one at hand. *See*, *Fid. & Deposit Co. of Maryland v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, 1163 (4th Cir. 1983); *Am. Ins. Co. v. Egerton*, 59 F.3d 165 (4th Cir. 1995) (unpublished opinion); *Buckeye Union Ins. Co. v. Boggs*, 109 F.R.D. 420, 424 (S.D.W. Va. 1986); *Bell BCI Co. v. Old Dominion Demolition Corp.*, 294 F. Supp. 2d 807, 812 (E.D. Va. 2003); *Hanover Ins. Co. v. Jett Mech., Inc.*, No. 1:10-CV-1231, 2011 WL 3809634, at *3 (E.D. Va. Aug. 24, 2011). "Provisions such as those just cited, while strict, are common in contracts of indemnification executed by contractors . . . and they have been uniformly sustained and upheld, subject to a single exception to be noted." *Bristol Steel*, 722 F.2d at 1163 (internal citations omitted).

The Court finds that the GAI is an unambiguous agreement entered into between the parties and, therefore, must be enforced according to its intent. The GAI clearly states that the Defendants must "indemnify and save [Western Surety] harmless from and against any loss which [Western Surety] may pay or incur." (Plaintiff's Mot. for Sum. Judg., Ex. 1, ¶ 3.) It also clearly defines "Event of Default" to include, among other things, "(d) Principal's failure, neglect, or refusal to pay for any labor or materials used in the prosecution of any Bonded Contract . . . ." (*Id.* at ¶ 1.) Again, in his deposition, James B. Clark testified that he understood what the indemnification agreement meant, and that it was "standard practice, when we got a bond, we had to personally guarantee it." (Depo. of James B. Clark, at 23:6-8.) The Plaintiff has presented evidence that it incurred a loss based on Rock Branch's default in its failure to pay its

16

subcontractors for certain labor or materials. The Court, therefore, finds that there is no genuine issue of material fact regarding the Defendants' requirement to indemnify Western Surety, and that Western Surety is entitled to indemnification based on the language of the GAI.

Given the Plaintiff's detailed explanation of the funds described in its reply, there is no indication or evidence of the Plaintiff being awarded a windfall if the GAI is enforced. The Defendants assert that the Plaintiff both retained the contract balance from Radford in the amount of $399,454.44, and seeks payment from them in the amount of $413,474.13, for a total of $812,928.57, creating a windfall for the Plaintiff. However, the Plaintiff's filings indicate that it did not receive the remaining contract balance from Radford. According to the Tender and Completion Agreement entered into by the Plaintiff, Radford, the Dougherty Group, and Rock Branch's subcontractors, the remaining contract balance of $399,454.44 was used to pay these parties for the completion of the work left undone by Rock Branch. (Pl.'s Mot. for Sum. Judg., Exhibit 14.) Thus, the remaining contract balance was not available to credit against the $350,533.66 paid out by the Plaintiff on the bond. The amount owing was verified in the declarations of Mr. Gardocky, the Plaintiff's representative. (Decl. of Jarome Gardocky, ¶ 5.)

Finally, the Court finds that the Defendants have failed to present evidence that there are genuine issues as to the affirmative defenses they raised. The Clarks argue that Western Surety failed to mitigate its damages regarding payments on the bond claims by pursuing Rock Branch's assets in the bankruptcy proceedings or by appropriately filing its UCC financing statement, and claims that "Western Surety has done nothing in Rock Branch's bankruptcy case to claim those funds." (Defs.' James B. Clark and Sally L. Clark's Resp. in Opp., at 18.) According to Mr.

and Mrs. Clark, if the Plaintiff had appropriately done this, their liability in indemnity would be less.

"The 'duty' to mitigate is limited in scope because 'an injured party is responsible for doing only those things which can be accomplished at a reasonable expense and by reasonable efforts.'" *Safeco*, 2012 WL 830158, at *8. "The duty to mitigate is properly characterized as a limitation on damages and simply prevents a plaintiff from recovering damages that could reasonably have been prevented without incurring additional cost, risk, or burden." *Id.* Mr. and Mrs. Clark provide no *evidence* to indicate that Western Surety has failed to pursue issues in the Rock Branch bankruptcy proceeding or mitigate its damages. The Plaintiff filed a proof of claim in the Rock Branch bankruptcy proceeding on December 15, 2016, for a $184,007.32 secured interest. (Pl.'s Reply in Response, Ex. 9.) The Defendants have not disputed this. Finally, as previously noted, the Plaintiff worked closely with Rock Branch to ensure the payments it made on the bond claims were reasonable.

The GAI expressly provides for the indemnitors to indemnify the Plaintiff for any losses incurred in settling claims on the bonds it issued and to pay Plaintiff, as surety, for attorneys' fees and other expenses in settling claims. The Plaintiff has set forth those expenses and has submitted sufficient evidence to show that it is entitled to be indemnified for $413,474.13 in payments and expenses it has incurred in settling the claims made against Rock Branch's bonds, including settlement payments in the amount of $350,533.66 and attorney's fees and expenses in the amount of $62,940.47. The Defendants have failed to produce any evidence to create a genuine issue of material fact regarding their duty under the GAI or the amount submitted by the Plaintiff. Therefore, partial summary judgment in favor of Western Surety is appropriate.

**CONCLUSION**

WHEREFORE, after thorough review and careful consideration, the Court **ORDERS** that *James B. Clark and Sally L. Clark's Motion for Summary Judgment* (Document 86) be **DENIED** and that *Western Surety Company's Motion for Partial Summary Judgment* (Document 57) be **GRANTED** as to these parties. The Court further **ORDERS** that any pending motions between these parties be **TERMINATED AS MOOT**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: November 3, 2017

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA